## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY and DMS IMAGING, INC.,<br><br>            Plaintiffs,<br><br>vs.<br><br>MEDICAL COACHES, INC.,<br>SIEMENS MEDICAL SOLUTIONS USA, INC.,<br>LEVITON MANUFACTURING CO., INC.,<br>JOHN DOE 1,<br>ELMWOOD SENSORS, LLC,<br><br>            Defendants. | CASE NO.:<br><br>JURY DEMANDED |

## COMPLAINT

Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, by and through their undersigned counsel, and complaining of the Defendants, Medical Coaches, Inc., Siemens Medical Solutions USA, Inc., Leviton Manufacturing Company, Inc., Elmwood Sensors, LLC, and the United States of America, state as follows upon information and belief:

## PARTIES

1.    At all times relevant, Plaintiff, United States Fire Insurance Company, (hereinafter "USFIC"), was a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 305 Madison Avenue, Morristown, New Jersey 07960. At all times relevant, USFIC was engaged in the business of issuing policies of insurance.

2.    At all times relevant, Plaintiff, DMS Imaging, Inc., (hereinafter "DMS"), was a corporation duly organized and existing under the laws of the State of Minnesota, with its principal place of business located at 215 South Cascade Street, Fergus Falls, Minnesota. At all times relevant, DMS was engaged in the business of leasing and servicing a wide variety of medical

imaging and patient monitoring equipment, including a mobile MRI unit referred to as MR-87.

3.    At all times relevant, Defendant, Medical Coaches, Inc., (hereinafter "Medical Coaches"), was a corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 399 County Highway 58, Oneonta, New York 13820. At all times relevant, Medical Coaches was engaged in the business of designing, manufacturing, assembling and selling mobile medical imaging and patient monitoring equipment, including Unit MR-87, which was a 2003 model.

4.    At all times relevant, Defendant, Siemens Medical Solutions USA, Inc., a subsidiary of Siemens Medical Solutions USA, Inc. (hereinafter "Siemens") was a corporation duly organized and existing under the laws of Delaware.  At all relevant times, Defendant Siemens was engaged in the business of designing, manufacturing, supplying, leasing and/or distributing medical equipment, including performing maintenance on mobile medical equipment leased by DMS, including Unit MR-87.

5.    At all times relevant, Leviton Manufacturing Company, Inc., (hereinafter "Leviton") was a corporation duly organized under the laws of the State of Delaware, with its principal place of business located at 59-25 Little Neck Pkwy., Little Neck, New York, 11362.  At all times relevant, Defendant Leviton was engaged in the business of designing, manufacturing, supplying, leasing and/or distributing electrical component equipment, including a receptacle that was incorporated into Unit MR-87.

6.    At all times relevant, John Doe 1, an unidentified entity, was engaged in the business of designing, manufacturing, supplying, leasing and/or distributing engine block heaters, including the component that was incorporated into Unit MR-87.  At the time of this filing, the identity of John Doe 1 is unknown.  Upon information and belief, John Doe 1 will be identified during discovery.

7.   Defendant Elmwood Sensors, LLC (hereinafter "Elmwood") is a limited liability company duly organized under the laws of the State of Delaware.  Upon information and belief, Elmwood is a subsidiary of Honeywell.  At all times relevant, Defendant Elmwood was engaged in the business of designing, manufacturing, supplying, leasing and/or distributing electrical component equipment, including components that were incorporated into Unit MR-87.

8.   The United States of America ("U.S."), is a body politic that, for purposes of this litigation, operates through its Executive Branch the Department of Veterans Affairs ("VA").  At all times relevant, the VA operated the VA Medical Center in San Juan, Puerto Rico.  The United States is not a named defendant, at this time, as Plaintiff is pursuing administrative remedies against the United States pursuant to the applicable federal statutes.

## JURISDICTION AND VENUE

9.   Jurisdiction is based on 28 U.S.C. §1332 as this action involves a controversy between citizens of different States and an amount in controversy which exceeds Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.

10.   Jurisdiction is based on 28 U.S.C. §1367 as any remaining claims are related to the same case or controversy such that this Court may exercise supplemental jurisdiction over those claims.

11.   Venue is proper in this District based on 28 U.S.C. §1391 in that the events giving rise to this claim occurred within this district.

## FACTUAL ALLEGATIONS

12.   On or about December 3, 2008, the subject unit, Unit MR-87, in which DMS held an interest through sale and/or lease, was in use at the Puerto Rico VA Hospital in San Juan, Puerto Rico, when it malfunctioned and caught fire, causing irreparable damage to the subject unit.

13.     The malfunction and failure of the subject unit was caused by the improper design and/or manufacture of the subject unit, the operational failure of one or more of the component parts integrated into the subject unit, and/or the improper technical assistance and service provided and/or performed with respect to the subject unit.

14.     The aforementioned malfunction resulted in a total loss of the subject unit such that DMS sustained damages in the amount of $ 1,024,376.00.

15.     At the time of the loss, DMS had a valid and enforceable policy of insurance with USFIC.  This policy provided insurance coverage against losses, including damage to Unit MR-87.

16.     Pursuant to the terms of the policy of insurance, USFIC reimbursed its insured, DMS, for a portion of the loss, in the amount of $716, 376.00, and therefore, is subrogated to the rights of recovery to the extent of the payments made.

17.     In addition, DMS incurred a deductible of $100,000.00 and uninsured, loss of use damages in the amount of $208,000.00.

## COUNT I
## NEGLIGENCE vs. MEDICAL COACHES, INC.

18.     Plaintiffs incorporate by reference paragraphs one through seventeen as though fully set forth here at length.

19.     At all relevant times, Defendant Medical Coaches had a duty to use reasonable care in the design, manufacture, supply, lease and/or distribution of Unit MR-87.

20.     The aforementioned malfunction and failure of Unit MR-87 and the resulting loss resulted from the negligent, careless and/or reckless actions and/or omissions and/or other culpable conduct of Defendant Medical Coaches by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors acting within the course and scope of their employment, said acts and/or omissions including, but not limited to the following:

a)   Failing to properly, safely and/or safely design Unit MR-87, including, *inter alia,* the specification for bundling of cables;

b)   Failing to properly install the cabling in Unit MR-87, specifically the cable running from the starter to the generator;

c)   Failing to provide adequate quality control or audit procedures that would have observed the improperly installed cable;

d)   Failing to warn DMS of the dangerous condition crated by the improperly installed cable;

e)   Failing to apply the degree of skill, which would customarily be brought by skilled merchants or craftsmen in the trade, to the design of the subject unit; and

f)   Otherwise failing to use due care under the circumstances.

21.   As a direct and proximate result of Medical Coaches' negligent, careless, and/or reckless acts and/or omissions, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Medical Coaches, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

<u>**COUNT II**</u>
<u>***RES IPSA LOQUITUR* vs. MEDICAL COACHES, INC.**</u>

22.   Plaintiffs incorporate by reference paragraphs one through twenty-one as though fully set forth here at length.

23.   The fire in Unit MR-84 occurred in a part of the unit that was "not maintainable," meaning that the area was not accessible from a routine maintenance standpoint.

24.   Because the area of origin of the fire was not generally accessible to any other person or entity, Medical Coaches was the only possessor or person exhibiting management or control of the wiring in the area near the generator beneath the trailer.

25.   A fire should not occur in the aforesaid manner except as a result of negligence.

26.     The area of origin of the fire was, therefore, in the exclusive possession and/or control of Defendant Medical Coaches at the time said negligence must have occurred.

27.     As a direct and proximate result of Medical Coaches' negligent, careless, and/or reckless acts and/or omissions, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Medical Coaches, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT III
## PRODUCT LIABILITY vs. MEDICAL COACHES, INC.

28.     Plaintiffs incorporate by reference paragraphs one through twenty-seven as though fully set forth here at length.

29.     In the course of its business, Medical Coaches designed, manufactured, supplied, leased and/or distributed Unit MR-87 in a defective condition.   Furthermore, Medical Coaches failed to warn DMS of the aforesaid defective condition.

30.     At all times relevant, Unit MR-87 was in a defective condition and unreasonably dangerous when used for the purpose and in the manner in which it was reasonably anticipated, designed and intended.

31.     DMS performed the proper maintenance on Unit MR-87 and/or ensured that proper maintenance was performed, in accordance with the manufacturer's instructions, and did not misuse, abuse or modify Unit MR-87.

32.    Upon discovery of the defective condition, DMS gave Medical Coaches prompt and reasonable notice; however; Medical Coaches has failed or refused to reimburse DMS for the damages it sustained.

33.    As a direct and proximate result of unreasonably dangerous condition of Unit MR-87, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Medical Coaches, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT IV
## BREACH OF CONTRACT (EXPRESS OR IMPLIED) vs. MEDICAL COACHES, INC.

34.    Plaintiffs incorporate by reference paragraphs one through thirty-three as though fully set forth here at length.

35.    Pursuant to its contractual agreement with DMS, Defendant, Medical Coaches, was required to design and manufacture Unit MR-87 in a good, safe and workmanlike manner.

36.    DMS performed all of its duties under the contract with Medical Coaches.

37.    Defendant, Medical Coaches, by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors, acting within the course and scope of their employment, breached its contractual obligations to DMS by its actions and/or omissions and/or otherwise culpable conduct including, but not limited to the following:

a)    Failing to properly, safely and/or safely design Unit MR-87, including, *inter alia,* the specification for bundling of cables;

b)    Failing to properly install the cabling in Unit MR-87, specifically the cable running from the starter to the generator;

7

c)   Failing to provide adequate quality control or audit procedures that would have observed the improperly installed cable;

d)   Failing to warn DMS of the dangerous condition crated by the improperly installed cable;

e)   Failing to apply the degree of skill, which would customarily be brought by skilled merchants or craftsmen in the trade, to the design of the subject unit; and

f)   Otherwise failing to use due care under the circumstances.

38.   Upon discovery of the aforesaid breaches, DMS gave prompt and reasonable notice to Medical Coaches; however, Medical Coaches has failed and refused to honor its contract or otherwise reimburse DMS for the damages it sustained.

39.   As a direct and proximate result of the breach of its contract by Medical Coaches, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Medical Coaches, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

<u>**COUNT V**</u>
<u>**BREACH OF WARRANTY vs. MEDICAL COACHES, INC.**</u>

40.   Plaintiffs incorporate by reference paragraphs one through thirty-nine as though fully set forth here at length.

41.   Defendant, Medical Coaches, expressly and/or impliedly warranted, promised or covenanted in writing, orally and/or by operation of law that the Unit MR-87 was free from defects, was constructed in accordance with industry standards and the applicable codes, and that the subject unit would be fit for the use for which it was intended and fit for a particular purpose.

42.     Notwithstanding the aforesaid warranty, Defendants, by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors, acting within the course and scope of their employment, breached its warranty obligations to DMS by its actions and/or omissions and/or otherwise culpable conduct including, but not limited to the following:

   a)   Failing to properly, safely and/or safely design Unit MR-87, including, *inter alia,* the specification for bundling of cables;
   b)   Failing to properly install the cabling in Unit MR-87, specifically the cable running from the starter to the generator;
   c)   Failing to provide adequate quality control or audit procedures that would have observed the improperly installed cable;
   d)   Failing to warn DMS of the dangerous condition crated by the improperly installed cable;
   e)   Failing to apply the degree of skill, which would customarily be brought by skilled merchants or craftsmen in the trade, to the design of the subject unit; and
   f)   Otherwise failing to use due care under the circumstances.

43.     DMS relied on the aforementioned warranties, and upon discovery of the aforesaid breaches, gave prompt and reasonable notice to Medical Coaches; however, Medical Coaches has failed and refused to honor its warranties or otherwise reimburse DMS for the damages it sustained.

44.     As a direct and proximate result of the breach of its warranty by defendant Medical Coaches, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Medical Coaches, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT VI
## NEGLIGENCE vs. SIEMENS

45.      Plaintiffs incorporate by reference paragraphs one through forty-four as though fully set forth here at length.

46.      At all relevant times, Defendant Siemens had a duty to use reasonable care in the design, manufacture, supply, lease and/or distribution of Unit MR-87.

47.      The aforementioned malfunction and failure of Unit MR-87 and the resulting loss resulted from the negligent, careless and/or reckless actions and/or omissions and/or other culpable conduct of Defendant Siemens by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors acting within the course and scope of their employment, said acts and/or omissions including, but not limited to the following:

a)      Failing to properly, adequately and/or safely design and/or manufacture the component part that was integrated into the subject unit;

b)      Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part that was integrated into Unit MR-87;

c)      Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part that was integrated into Unit MR-87;

d)      Failing to design or manufacture the component part that was integrated into Unit MR-87 in a reasonably good and workmanlike manner;

e)      Failing to design and/or manufacture the component part that was integrated into Unit MR-87 so that it was fit for its intended purpose;

f)      Failing to inspect the component part that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part;

g)      Failing to properly service the subject unit, including the generator and heating block;

h)      Failing to comply with applicable guidelines, policies, procedures and industry customs and practices regarding the servicing of the subject unit;

i)      Failing to apply the degree of skill, which would customarily be brought to the servicing of the subject unit?

j)      Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding servicing of the subject unit;

k)      Failing to service the unit in a reasonably good and workmanlike manner;

l)     Failing to service the subject unit so that it was fit for its intended purpose;

m)    Failing to inspect the subject unit once the service being performed was completed in order to detect defects with the technical service being provided;

n)    Failing to properly hire, supervise, train and/or control its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors in connection with the servicing of the subject unit; and

o)    Otherwise failing to use due care under the circumstances.

48.    As a direct and proximate result of defendants' negligent, careless, and/or reckless acts and/or omissions by Defendant Siemens, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Siemens Medical Solutions USA, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

<u>COUNT VII</u>
<u>PRODUCT LIABILITY vs. SIEMENS</u>

49.    Plaintiffs incorporate by reference paragraphs one through forty-eight as though fully set forth here at length.

50.    In the course of its business, Siemens designed, manufactured, supplied, leased and/or distributed Unit MR-87 in a defective condition.   Furthermore, Siemens failed to warn DMS of the aforesaid defective condition.

51.    At all times relevant, Unit MR-87 was in a defective condition and unreasonably dangerous when used for the purpose and in the manner in which it was reasonably anticipated, designed and intended.

52.     DMS performed the proper maintenance on Unit MR-87 and/or ensured that proper maintenance was performed, in accordance with the manufacturer's instructions, and did not misuse, abuse or modify Unit MR-87.

53.     Upon discovery of the defective condition, DMS gave Siemens prompt and reasonable notice; however, Siemens has failed or refused to reimburse DMS for the damages it sustained.

54.     As a direct and proximate result of unreasonably dangerous condition of Unit MR-87, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Siemens Medical Solutions USA, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT VIII
## BREACH OF CONTRACT (EXPRESS OR IMPLIED) vs. SIEMENS

55.     Plaintiffs incorporate by reference paragraphs one through fifty-five as though fully set forth here at length.

56.     Pursuant to its contractual agreement with DMS, Defendant, Siemens, was required to design and manufacture Unit MR-87 in a good, safe and workmanlike manner.

57.     DMS performed all of its duties under the contract with Siemens.

58.     Defendant, Siemens, by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors, acting within the course and scope of their employment, breached its contractual obligations to DMS by its actions and/or omissions and/or otherwise culpable conduct including, but not limited to the following:

a)    Failing to properly, adequately and/or safely design and/or manufacture the component part that was integrated into the subject unit;

b)    Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part that was integrated into Unit MR-87;

c)    Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part that was integrated into Unit MR-87;

d)    Failing to design or manufacture the component part that was integrated into Unit MR-87 in a reasonably good and workmanlike manner;

e)    Failing to design and/or manufacture the component part that was integrated into Unit MR-87 so that it was fit for its intended purpose;

f)    Failing to inspect the component part that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part;

g)    Failing to properly service the subject unit, including the generator and heating block;

h)    Failing to comply with applicable guidelines, policies, procedures and industry customs and practices regarding the servicing of the subject unit;

i)    Failing to apply the degree of skill, which would customarily be brought to the servicing of the subject unit?

j)    Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding servicing of the subject unit;

k)    Failing to service the unit in a reasonably good and workmanlike manner;

l)    Failing to service the subject unit so that it was fit for its intended purpose;

m)    Failing to inspect the subject unit once the service being performed was completed in order to detect defects with the technical service being provided;

n)    Failing to properly hire, supervise, train and/or control its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors in connection with the servicing of the subject unit; and

o)    Otherwise failing to use due care under the circumstances.

59.    Upon discovery of the aforesaid breaches, DMS gave prompt and reasonable notice to Siemens; however, Siemens has failed and refused to honor its contract or otherwise reimburse DMS for the damages it sustained.

60.    As a direct and proximate result of the breach of its contract by Siemens, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Siemens Medical Solutions USA, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

**COUNT IX**
**BREACH OF WARRANTY vs. SIEMENS**

61.     Plaintiffs incorporate by reference paragraphs one through sixty as though fully set forth here at length.

62.     Defendant, Siemens, expressly and/or impliedly warranted, promised or covenanted in writing, orally and/or by operation of law that the Unit MR-87 was free from defects, was constructed in accordance with industry standards and the applicable codes, and that the subject unit would be fit for the use for which it was intended and fit for a particular purpose.

63.     Notwithstanding the aforesaid warranty, Defendant, Siemens, by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors, acting within the course and scope of their employment, breached its warranty obligations to DMS by its actions and/or omissions and/or otherwise culpable conduct including, but not limited to the following:

a)     Failing to properly, adequately and/or safely design and/or manufacture the component part that was integrated into the subject unit.

b)     Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part that was integrated into Unit MR-87.

c)     Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part that was integrated into Unit MR-87.

d)     Failing to design or manufacture the component part that was integrated into Unit MR-87 in a reasonably good and workmanlike manner.

e)     Failing to design and/or manufacture the component part that was integrated into Unit MR-87 so that it was fit for its intended purpose.

f)   Failing to inspect the component part that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part;

g)   Failing to properly service the subject unit, including the generator and heating block;

h)   Failing to comply with applicable guidelines, policies, procedures and industry customs and practices regarding the servicing of the subject unit;

i)   Failing to apply the degree of skill, which would customarily be brought to the servicing of the subject unit?

j)   Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding servicing of the subject unit;

k)   Failing to service the unit in a reasonably good and workmanlike manner;

l)   Failing to service the subject unit so that it was fit for its intended purpose;

m)   Failing to inspect the subject unit once the service being performed was completed in order to detect defects with the technical service being provided;

n)   Failing to properly hire, supervise, train and/or control its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors in connection with the servicing of the subject unit; and

o)   Otherwise failing to use due care under the circumstances.

64.   DMS relied on the aforementioned warranties, and upon discovery of the aforesaid breaches, gave prompt and reasonable notice to Siemens; however, Siemens has failed and refused to honor its warranties or otherwise reimburse DMS for the damages it sustained.

65.   As a direct and proximate result of the breach of its warranty by Defendant Siemens, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Siemens Medical Solutions USA, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

<u>COUNT X</u>
<u>NEGLIGENCE vs. LEVITON</u>

66.   Plaintiffs incorporate by reference paragraphs one through sixty-five as though fully set forth here at length.

67.     At all relevant times, Defendant Leviton had a duty to use reasonable care in the design, manufacture, supply, lease and/or distribution of its products, including a receptacle which was incorporated as a component part into Unit MR-87.

68.     The aforementioned malfunction and failure of Unit MR-87 and the resulting loss resulted from the negligent, careless and/or reckless actions and/or omissions and/or other culpable conduct of Defendant Leviton by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors acting within the course and scope of their employment, said acts and/or omissions including, but not limited to the following:

a)     Failing to properly, adequately and/or safely design and/or manufacture the component part, a receptacle that was integrated into the subject unit;

b)     Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part, a receptacle, that was integrated into Unit MR-87;

c)     Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part, a receptacle that was integrated into UNIT MR-87;

d)     Failing to design or manufacture the component part, a receptacle that was integrated into UNIT MR-87 in a reasonably good and workmanlike manner;

e)     Failing to design and/or manufacture the component part, a receptacle, that was integrated into Unit MR-87 so that it was fit for its intended purpose;

f)     Failing to inspect the component part, a receptacle, that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part; and

g)     Otherwise failing to use due care under the circumstances.

69.     As a direct and proximate result of Leviton's negligent, careless, and/or reckless acts and/or omissions, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Leviton Manufacturing Company, Inc., for damages in an amount in excess of $1,000,000.00,

together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

**COUNT XI**
**PRODUCT LIABILITY vs. LEVITON**

70.     Plaintiffs incorporate by reference paragraphs one through sixty-nine as though fully set forth here at length.

71.     In the course of its business, Leviton designed, manufactured, supplied, leased and/or distributed a component part, a receptacle, which was incorporated into Unit MR-87, in a defective condition.   Furthermore, Leviton failed to warn DMS of the aforesaid defective condition.

72.     At all times relevant, Unit MR-87 was in a defective condition and unreasonably dangerous when used for the purpose and in the manner in which it was reasonably anticipated, designed and intended.

73.     DMS performed the proper maintenance on Unit MR-87 and/or ensured that the proper maintenance was performed, including all component parts, in accordance with the manufacturer's instructions, and did not misuse, abuse or modify Unit MR-87.

74.     Upon discovery of the defective condition, DMS gave Leviton prompt and reasonable notice; however, Leviton has failed or refused to reimburse DMS for the damages it sustained.

75.     As a direct and proximate result of unreasonably dangerous condition of Unit MR-87, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Levition Manufacturing Company, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT XII
## BREACH OF WARRANTY vs. LEVITON

76.     Plaintiffs incorporate by reference paragraphs one through seventy-five as though fully set forth here at length.

77.     Defendant, Leviton, expressly and/or impliedly warranted, promised or covenanted in writing, orally and/or by operation of law that the component part, a receptacle, of Unit MR-87 that it had designed, manufactured and/or distributed was free from defects, was constructed in accordance with industry standards and the applicable codes, and that the subject unit would be fit for the use for which it was intended and fit for a particular purpose.

78.     Notwithstanding the aforesaid warranty, Defendants, by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors, acting within the course and scope of their employment, breached its warranty obligations to DMS by its actions and/or omissions and/or otherwise culpable conduct including, but not limited to the following:

a)  Failing to properly, adequately and/or safely design and/or manufacture the component part, a receptacle that was integrated into the subject unit.

b)  Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part, a receptacle that was integrated into UNIT MR-87.

c)  Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part, a receptacle that was integrated into UNIT MR-87.

d)  Failing to design or manufacture the component part, a receptacle that was integrated into UNIT MR-87 in a reasonably good and workmanlike manner.

e)  Failing to design and/or manufacture the component part that was integrated into Unit MR-87 so that it was fit for its intended purpose.

f)  Failing to inspect the component part, a receptacle, that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part; and

g)  Otherwise failing to use due care under the circumstances.

79.     DMS relied on the aforementioned warranties, and upon discovery of the aforesaid breaches, gave prompt and reasonable notice to Levition; however, Leviton has failed and refused to honor its warranties or otherwise reimburse DMS for the damages it sustained.

80.     As a direct and proximate result of the breach of its warranty by Defendant Leviton, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Leviton Manufacturing Company, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

**COUNT XIII**
**NEGLIGENCE vs. JOHN DOE 1**

81.     Plaintiffs incorporate by reference paragraphs one through eighty as though fully set forth here at length.

82.     At all relevant times, Defendant John Doe 1 had a duty to use reasonable care in the design, manufacture, supply, lease and/or distribution of its products, including a block heater which was incorporated as a component part into Unit MR-87.

83.     The aforementioned malfunction and failure of Unit MR-87 and the resulting loss resulted from the negligent, careless and/or reckless actions and/or omissions and/or other culpable conduct of Defendant John Doe 1 by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors acting within the course and scope of their employment, said acts and/or omissions including, but not limited to the following:

a)     Failing to properly, adequately and/or safely design and/or manufacture the component part, a block heater that was integrated into the subject unit;

b)     Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part, a block heater, that was integrated into Unit MR-87;

c)     Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part, a block heater, that was integrated into Unit MR-87;

d)   Failing to design or manufacture the component part, a block heater that was integrated into UNIT MR-87 in a reasonably good and workmanlike manner;

e)   Failing to design and/or manufacture the component part, a block heater, that was integrated into Unit MR-87 so that it was fit for its intended purpose;

f)   Failing to inspect the component part, a block heater, that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part; and

g)   Otherwise failing to use due care under the circumstances.

84.   As a direct and proximate result of John Doe 1's negligent, careless, and/or reckless acts and/or omissions, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, John Doe 1, for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT XIV
## PRODUCT LIABILITY vs. JOHN DOE 1

85.   Plaintiffs incorporate by reference paragraphs one through eighty-five as though fully set forth here at length.

86.   In the course of its business, John Doe 1 designed, manufactured, supplied, leased and/or distributed a component part, a block heater, which was incorporated into Unit MR-87, in a defective condition.   Furthermore, John Doe failed to warn DMS of the aforesaid defective condition.

87.   At all times relevant, Unit MR-87 was in a defective condition and unreasonably dangerous when used for the purpose and in the manner in which it was reasonably anticipated, designed and intended.

88.     DMS performed the proper maintenance on Unit MR-87 and/or ensured that proper maintenance was performed, including all component parts, in accordance with the manufacturer's instructions, and did not misuse, abuse or modify Unit MR-87.

89.     As a direct and proximate result of unreasonably dangerous condition of Unit MR-87, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, John Doe 1, for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

**COUNT XV**
**BREACH OF WARRANTY vs. JOHN DOE 1**

90.     Plaintiffs incorporate by reference paragraphs one through eighty-nine as though fully set forth here at length.

91.     Defendant, John Doe 1, expressly and/or impliedly warranted, promised or covenanted in writing, orally and/or by operation of law that the component part, a block heater, of Unit MR-87 that it had designed, manufactured and/or distributed was free from defects, was constructed in accordance with industry standards and the applicable codes, and that the subject unit would be fit for the use for which it was intended and fit for a particular purpose.

92.     Notwithstanding the aforesaid warranty, Defendants, by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors, acting within the course and scope of their employment, breached its warranty obligations to DMS by its actions and/or omissions and/or otherwise culpable conduct including, but not limited to the following:

a)     Failing to properly, adequately and/or safely design and/or manufacture the component part, a block heater that was integrated into the subject unit;

b)     Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part, a block heater, that was integrated into Unit MR-87;

c)     Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part, a block heater, that was integrated into Unit MR-87;

d)     Failing to design or manufacture the component part, a block heater that was integrated into UNIT MR-87 in a reasonably good and workmanlike manner;

e)     Failing to design and/or manufacture the component part, a block heater, that was integrated into Unit MR-87 so that it was fit for its intended purpose;

f)     Failing to inspect the component part, a block heater, that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part; and

g)     Otherwise failing to use due care under the circumstances.

93.     DMS relied on the aforementioned warranties.

94.     As a direct and proximate result of the breach of its warranty by John Doe 1, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, John Doe 1, for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT XVI
## NEGLIGENCE vs. ELMWOOD SENSORS

95.     Plaintiffs incorporate by reference paragraphs one through ninety-four as though fully set forth here at length.

96.     At all relevant times, Defendant Elmwood had a duty to use reasonable care in the design, manufacture, supply, lease and/or distribution of component parts, including the limit switch that were incorporated into Unit MR-87.

97.     The aforementioned malfunction and failure of Unit MR-87 and the resulting loss resulted from the negligent, careless and/or reckless actions and/or omissions and/or other culpable conduct of Defendant Elmwood by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors acting within the course and scope of their employment, said acts and/or omissions including, but not limited to the following:

a)     Failing to properly, adequately and/or safely design and/or manufacture the component part, a limit switch incorporated into the block heater, that was integrated into the subject unit;

b)     Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part, a limit switch incorporated into the block heater, that was integrated into Unit MR-87;

c)     Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part, a limit switch incorporated into the block heater, that was integrated into Unit MR-87;

d)     Failing to design or manufacture the component part, a limit switch incorporated into the block heater that was integrated into UNIT MR-87 in a reasonably good and workmanlike manner;

e)     Failing to design and/or manufacture the component part, a limit switch incorporated into the block heater, that was integrated into Unit MR-87 so that it was fit for its intended purpose;

f)     Failing to inspect the component part, a limit switch incorporated into the block heater, that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part; and

g)     Otherwise failing to use due care under the circumstances.

98.     As a direct and proximate result of Elmwood's negligent, careless, and/or reckless acts and/or omissions, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

        **WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Elmwood Sensors, LLC, for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT XVII
## PRODUCT LIABILITY vs. ELMWOOD SENSORS

99.    Plaintiffs incorporate by reference paragraphs one through ninety-eight as though fully set forth here at length.

100.    In the course of its business, Elmwood designed, manufactured, supplied, leased and/or distributed a component part, a limit switch that was incorporated into UNIT MR-87, in a defective condition.    Furthermore, Elmwood failed to warn DMS of the aforesaid defective condition.

101.    At all times relevant, Unit MR-87 was in a defective condition and unreasonably dangerous when used for the purpose and in the manner in which it was reasonably anticipated, designed and intended.

102.    DMS performed the proper maintenance on Unit MR-87 and/or ensured that proper maintenance was performed, including the component parts, in accordance with the manufacturer's instructions, and did not misuse, abuse or modify Unit MR-87.

103.    As a direct and proximate result of unreasonably dangerous condition of Unit MR-87, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.00.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Elmwood Sensors, LLC, for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## COUNT XVIII
## BREACH OF WARRANTY vs. ELMWOOD SENSORS

104.    Plaintiffs incorporate by reference paragraphs one through one hundred and three as though fully set forth here at length.

105.    Defendant, Elmwood, expressly and/or impliedly warranted, promised or covenanted in writing, orally and/or by operation of law that the component part it manufactured, a limit switch that was incorporated into Unit MR-87, was free from defects, was constructed in accordance with industry standards and the applicable codes, and that the subject unit would be fit for the use for which it was intended and fit for a particular purpose.

106.    Notwithstanding the aforesaid warranty, Defendants, by and through its agents, servants, sub-agents, representatives, workmen, employees and/or subcontractors, acting within the course and scope of their employment, breached its warranty obligations to DMS by its actions and/or omissions and/or otherwise culpable conduct including, but not limited to the following:

a)   Failing to properly, adequately and/or safely design and/or manufacture the component part, a limit switch incorporated into the block heater, that was integrated into the subject unit;

b)   Failing to comply with that applicable guidelines, policies, procedures and industry customs and practices regarding the design and/or manufacture of the component part, a limit switch incorporated into the block heater, that was integrated into Unit MR-87;

c)   Failing to follow the instructions, directions and/or advice of the manufacturer of the subject unit regarding the design and/or manufacture of the component part, a limit switch incorporated into the block heater, that was integrated into Unit MR-87;

d)   Failing to design or manufacture the component part, a limit switch incorporated into the block heater that was integrated into UNIT MR-87 in a reasonably good and workmanlike manner;

e)   Failing to design and/or manufacture the component part, a limit switch incorporated into the block heater, that was integrated into Unit MR-87 so that it was fit for its intended purpose;

f)   Failing to inspect the component part, a limit switch incorporated into the block heater, that was integrated into Unit MR-87 once it was designed and/or manufactured in order to detect defects with the design and/or manufacture of the component part; and

g)   Otherwise failing to use due care under the circumstances.

107.    DMS relied on the aforementioned warranties.

108.    As a direct and proximate result of the breach of warranty by Defendant Elmwood, DMS sustained damage and destruction to its property and business in an amount in excess of $1,000,000.

**WHEREFORE**, Plaintiffs, United States Fire Insurance Company, as subrogee of DMS Imaging, Inc., and DMS Imaging, Inc., individually, demand judgment against Defendant, Medical Coaches, Inc., for damages in an amount in excess of $1,000,000.00, together with interest, costs, attorney's fees and such other damages as may properly be awarded by this Court.

## DEMAND FOR A TRIAL BY JURY

Plaintiffs hereby demand a trial by jury on all issues in this action.

At San Juan, Puerto Rico, this 2nd day of December, 2009.

s/Jorge Miguel Suro Ballester
**JORGE MIGUEL SURO BALLESTER, ESQ.**
USDC-PR 121713
Attorney for plaintiffs
1225 Ponce de León Ave., PH-2
San Juan, PR  00907-3921
Tels.  (787) 724-5522/5542
Fax. (787) 722-7711
Email: jmsb@prtc.net